# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

————————

No. 96-1009SI

————————

George Goff and Dudie J. Rose,    *
                             *
        Appellees,          *
                             *  On Appeal from the United
   v.                       *  States District Court
                             *  for the Southern District
                             *  of Iowa.
C. C. Nix and John Henry,     *
                             *
        Appellants.        *

————————

Submitted:  January 16, 1997

Filed:  May 15, 1997

————————

Before RICHARD S. ARNOLD, Chief Judge, ROSS and BEAM, Circuit Judges.

————————

RICHARD S. ARNOLD, Chief Judge.

George Goff and Dudie Rose brought this 42 U.S.C. § 1983 action against defendants for an injunction against the Iowa State Penitentiary's prohibition of legal correspondence between inmates in different prison units. The District Court granted an injunction and ordered the defendants to allow prisoners to send legal mail to inmates in other facilities. The Court also ordered the defendants to ensure that legal documents would be returned to their owner when held by a "jailhouse lawyer" who is transferred to another facility. We affirm in part and reverse in part, and vacate the injunction except to the extent that it requires the

defendants to provide for the return of legal documents to their owner.

## I.

The Iowa State Penitentiary (ISP) includes several facilities of varying security levels. Prisoners assigned to one such unit may be transferred to another during the period of their incarceration. Prisoners are generally not allowed to correspond with inmates in other units. ISP has a written policy that allows inmates to send legal correspondence to jailhouse lawyers within their unit, called the "red star system." An inmate who desires to send such mail notifies a prison officer, who inspects the envelope and documents for contraband. The inmate then places the documents in the envelope, seals it, and affixes a red star. The officer then takes the envelope to be delivered to the other inmate along with other legal mail from outside the prison. Until late 1988, ISP allowed prisoners to send correspondence to inmates in other units by this same procedure. A deputy warden noticed that the written policy did not permit this practice, and circulated a memo prohibiting future inter-unit legal correspondence.

The effect of the change in 1988 was two-fold. First, an inmate could not continue to correspond with another inmate - whether a co-plaintiff or his jailhouse lawyer - who was transferred to a different unit. Second, transferred jailhouse lawyers could not return legal documents they held to their owner. The latter effect occurs because prisoner transfers at ISP typically happen with very short advance notice to the inmate. The prisoner may either take legal documents (as personal property) with him, or leave them behind. If he takes the documents, he cannot return them to their owner, because the ISP policy prohibits inter-unit mailings. If he leaves the documents, the prison will

destroy them in the course of cleaning out the cell. There is, consequently, no way for an inmate to return legal documents entrusted to him to their owner.

George Goff and Dudie Rose act as jailhouse lawyers for their fellow inmates, assisting them with various legal claims. Goff and Rose also have acted as their own lawyers, and in 1990 brought a lawsuit to challenge the conditions of confinement of the unit in which they both were housed. Shortly after bringing the suit in January, Goff was transferred to ISP's main penitentiary. Rose was transferred in April to a different unit, and transferred again in May to the main facility, in which Goff was already housed. Although the two were unable to correspond during the period of their separation, they were able to communicate again once they were reunited in May. Other "clients" of theirs (from their original unit), however, were no longer able to correspond with Goff or Rose after the transfers.

Goff and Rose challenge ISP's change to the more restrictive policy. First, they claim that ISP's prohibition on legal correspondence between prisoners in different units prevents inmates from maintaining an attorney-client relationship with a jailhouse lawyer who is transferred. Second, Goff and Rose contend that ISP barred them, as co-plaintiffs, from communicating with each other for a period, and thereby precluded them from prosecuting their pending claim effectively. Finally, they challenge ISP's failure to provide a means by which jailhouse lawyers who possess a client's documents and are then transferred may return the documents to their owner.

After conducting a bench trial, the District Court granted relief to the plaintiffs on each of their claims, holding that the restrictions on legal communications burdened inmates' right of

access to the courts under <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), and that the defendants had failed to demonstrate that the restrictions were reasonably related to legitimate penological interests, as required by <u>Turner v. Safley</u>, 482 U.S. 78 (1987).  The Court ordered ISP to propose a system that met constitutional requirements.  The Court later held that the proposals submitted by the defendants did not remedy the constitutional violations, and it proceeded to order the reinstitution of essentially the <u>de facto</u> policy - which allowed inter-unit correspondence - that was in place before 1989.  Defendants then took this appeal.

## II.

Goff and Rose first argue that the defendants' appeal should be dismissed because it is time-barred.  They contend that the 30-day time limit within which to file a notice of appeal after the entry of the District Court's judgment, Fed. R. App. P. 4(a)(1), began to run on October 19, 1993, when the District Court entered its judgment for the plaintiffs and ordered ISP to formulate a plan.  Therefore, they contend, the defendants' Notice of Appeal filed on December 18, 1995, was untimely.  Defendants counter that the clock began running when the District Court entered its permanent injunction ordering reinstatement of the red-star system on November 20, 1995, and that their notice of appeal was therefore timely.  They argue in the alternative that even if the 1993 judgment was final and appealable, they may challenge the merits of the 1993 judgment in this appeal from the 1995 order.

This appeal is untimely only if the District Court's 1993 decision - which ordered only that ISP submit a plan to remedy the constitutional flaws in its policy - was a final judgment, appealable to this Court under 28 U.S.C. § 1291.  We believe that the District Court's 1993 order was no more final under § 1291 than

the one at issue in <u>Sherpell v. Humnoke School Dist.</u>, 814 F.2d 538 (8th Cir. 1987), which held that a district court order to a school district to submit a plan to remedy an unconstitutional atmosphere of racial hostility was not an appealable final judgment. <u>Id.</u> at 539; see also <u>Hendrickson v. Griggs</u>, 856 F.2d 1041, 1044 (8th Cir. 1988) (holding injunction ordering prison to submit plan for reformation of unconstitutional prison conditions not appealable as interlocutory order under 28 U.S.C. § 1292(a)(1)). The November 1995 judgment is, therefore, the pertinent (and only final) one for purposes of determining timeliness. As the notice of appeal from that order was filed on time, we have jurisdiction.

III.

The District Court held ISP's policy constitutionally defective in three respects. First, the policy precludes co-plaintiffs confined to different units from coordinating their case. Second, it prevents the continuation of a jailhouse lawyer's relationship with his client once one or the other is transferred to a different unit. Finally, it precludes a jailhouse lawyer from returning his client's documents to him when one or the other (or both) is transferred to another unit. The Court ordered ISP to reinstate its pre-1989 policy that allowed inter-unit correspondence, and to provide for the return of documents to their owner when their holder/lawyer is transferred.

The defendants challenge Goff's and Rose's standing to bring their claims on the basis of <u>Lewis v. Casey</u>, 116 S. Ct. 2174 (1996), a case decided during the pendency of this appeal. <u>Lewis</u> reminded us that the Constitution requires a plaintiff to demonstrate actual injury in order to have a federal court adjudicate a claim and allows no exception in prison-conditions cases. <u>Id.</u> at 2180. It thus directed the judiciary to scrutinize

-5-

the standing of plaintiffs in prison-conditions litigation to ensure that the plaintiffs have suffered injury and that the relief afforded does not go beyond remedying that injury to change general conditions the court finds disturbing.  We discuss plaintiffs' standing to assert each claim together with our consideration of the merits of the underlying claim.

A.

The first component of relief the District Court ordered was for the prison to allow communications between an inmate and his chosen jailhouse lawyer, even after one is transferred to a new unit.  A jailhouse lawyer has no independent right to provide legal advice, see Gassler v. Rayl, 862 F.2d 706, 707-08 (8th Cir. 1988), but may assert the right on behalf of other inmates who are otherwise unable to obtain access to the courts, Flittie v. Solem, 827 F.2d 276, 280 (8th Cir. 1987).  The essence of plaintiffs' challenge is that their clients cannot continue their relationship with the plaintiffs after a transfer.  There was no finding, however, that the client inmates were unable to find new jailhouse  lawyers or other means of gaining access to the courts.[1]  Consequently, Goff and Rose lack standing to assert this claim because they suffered no injury themselves and have not

---

[1]Rose had asked Goff to assist him with his post-conviction proceedings, and contends that he lost critical papers, thereby prejudicing his pursuit of his case, when Goff was transferred.  But Rose had a court-appointed lawyer for these proceedings.  He cannot, therefore, challenge ISP's policy prohibiting communications between himself and Goff, because he had access both to a lawyer and the courts.  The deprivation of his papers provides a separate basis for a claim, which we consider later.  Likewise, the District Court found that other inmates who lost their papers when their lawyers were transfered had difficulty obtaining new jailhouse lawyers because they had no papers, not because other lawyers were unavailable.

demonstrated injury to other inmates that they may assert on those inmates'
behalf.  The claim is dismissed for lack of standing and the injunction
vacated accordingly.

B.

The next aspect of relief the District Court ordered was that ISP
allow co-plaintiffs in different units to communicate.  Goff and Rose
sought relief in this case because the prison's policy barred them from
corresponding during their challenge to prison overcrowding in another
case.  The District Court granted a preliminary injunction that allowed
Goff and Rose to correspond.  The defendants argue that the plaintiffs lack
standing to assert this claim because Goff and Rose suffered no actual
injury from the policy, as they had counsel assigned to them (although
counsel later moved successfully to be discharged on the basis of her
belief that the case was frivolous), and as they were not prejudiced by
their inability to communicate.  The District Court found that the
prohibition on correspondence created substantial obstacles for inmates who
wished to litigate as co-plaintiffs.  In particular, Goff and Rose were
unable to coordinate recruitment of witnesses for their upcoming trial.
Although Goff and Rose were ultimately unsuccessful in that case, the case
was decided on its merits after an evidentiary hearing and briefing.  See
Rose v. Nix, No. 4-90-CV-70017 (S.D. Iowa, Dec. 29, 1992) (Judge Harold D.
Vietor, adopting the Report and Recommendation of Magistrate Judge Celeste
F. Bremer).  It cannot, therefore, be characterized accurately as
"frivolous."  We believe that Goff and Rose have shown that a non-frivolous
claim was impeded by the prison's policy, see Lewis, supra, 116 S. Ct. at
2181, and that they therefore have standing to contest ISP's restrictions
on co-plaintiff communications.

The defendants argue that even if Goff and Rose have standing to challenge ISP's policy on co-plaintiff communications, the restriction was reasonably related to a legitimate penological interest, and therefore constitutional. Turner v. Safley, 482 U.S. 78, 89 (1987). They explain that the principal justification for the policy is security. A deputy warden testified that the restriction precludes inmates from disseminating information about a transferee to inmates in his new facility. This is particularly important when the person is being transferred for his own safety, for example, if he has been identified as a "snitch." The second reason for the policy that the deputy warden offered was that it prevented the transfer of contraband[2] or love letters to inmates in other units. The District Court found that the deputy warden admitted that the abuses of the system that allowed inter-unit mail were minimal, but our reading of the transcript leads us to disagree, as the warden repeatedly insisted that there were probably many abuses that he was not aware of, in addition to the dozen violations identified each year.

There is little difference between the policy here and Missouri's prison policy upheld in Turner, 482 U.S. at 91-93, except that there the prison allowed legal correspondence. In Turner, the regulation was challenged as a First Amendment violation; here, as a restriction on the right to meaningful access to the courts as explained in Bounds v. Smith, 430 U.S. 817 (1977). Turner provides no difference in the level of justification a prison must have depending on the source of the constitutional claim. Turner, 482 U.S. at 89. ISP's policy burdens a different

---

[2]The warden explained that anything that inmates are not allowed by prison policy to possess constitutes "contraband." The term is not limited to such things as drugs and weapons.

right held by prisoners, but achieves its end (preventing inciting information from being transmitted to other units) by means similar (a ban on inter-unit mail) to those held constitutional in Turner.[3] Therefore, we conclude that the ban on inter-unit correspondence is permissible under the Constitution and reverse the District Court's grant of an injunction against it.

C.

The District Court also ordered that ISP provide a means for the return of an inmate's legal documents to him when his jailhouse lawyer is transferred to another unit. The Court directed ISP to send an official to the cell of a jailhouse lawyer shortly before he is transferred to ask what legal papers should remain, determine to whom they belong (by scanning them briefly), and ensure the return of the documents to their owner. Defendants contend that Goff and Rose do not have standing to challenge this policy because they were not themselves injured by it. The District Court found, to the contrary, that Rose lost legal papers critical to his post-conviction proceedings when Goff, who possessed them at the time, was transferred. Rose, therefore, may assert this claim on his own behalf. Because we can see no reason why Rose's claim is substantially different from those that might be brought by other

_____

[3]It is of no moment that ISP did at one point allow such correspondence. The inmates did not thereby acquire a protectible entitlement to the continuation of the policy. They were merely provided a privilege that the prison later decided no longer to extend to them because of security concerns. While the previous policy was certainly reasonable, as Turner makes clear, that does not necessarily make any more restrictive policy unreasonable. The difficulty ISP would face in determining whether a prisoner had placed legal correspondence or improper correspondence in a red-star envelope allows it to conclude reasonably that the new policy was an appropriate (albeit not the only possible) response.

-9-

inmates who are deprived of their papers in the same way, an injunction against the prison's policy (as opposed to an injunction applicable only to Rose) would not be inappropriately overbroad.

The defendants offer four justifications for ISP's restriction. First, they explain that the policy is consistent with halting the jailhouse lawyer-client relationship when one is transferred. Second, the policy eliminates concerns over the free passage of paper between inmates. Third, it allays fears about the transfer of contraband. Finally, ISP contends it is burdensome to supply a prison official to attend to such matters upon the transfer of anyone claiming to be a jailhouse lawyer. Together, the defendants argue, these reasons make the policy constitutional under Turner.

The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. Tyler v. Woodson, 597 F.2d 643, 644 (8th Cir. 1979) (citing Tyler v. "Ron" Deputy Sheriff, 574 F.2d 427 (8th Cir. 1978)). The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts. We will not deny relief on the unsupported assumption that the papers involve only frivolous claims. Therefore, the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest. Turner, supra.

The defendants' proffered justifications do not persuade us that the District Court's injunction was incorrectly issued. The lawyer-client relationship is already essentially concluded upon the lawyer's transfer, because of the prison's permissible restriction on future correspondence, and will not be more effectively severed by the destruction or withholding of documents.

The defendants do not challenge the lawyer's acquisition of the client's papers, and we do not see how their retransmittal to the client constitutes a worrisome free passage of paper. We also believe that the feared transfer of contraband can be avoided by an official's scanning the documents before he returns them. Moreover, the most persuasive justification for prohibiting inter-unit correspondence is not present here: the documents stay within their original unit and there is, therefore, no opportunity to communicate information about inmates to other units. Finally, we do not see the administrative burden as large, especially when compared to the loss an inmate may suffer when what may be his only copy of a legal document that could determine his freedom is destroyed. We therefore conclude that the District Court correctly issued an injunction against the practice, and the relief granted was appropriate.

IV.

We conclude that the plaintiffs do not have standing to challenge ISP's policy restricting inter-unit correspondence, except for that between co-plaintiffs. The plaintiffs do have standing to challenge ISP's failure to provide for the return of legal documents to inmates when the holder of the documents is transferred. We hold the restriction on inter-unit correspondence between co-plaintiffs is constitutional and therefore vacate the District Court's injunction against this policy. We hold that the failure to provide for the return of an inmate's legal documents to him does violate the Constitution and therefore uphold the District Court's injunction and remedial scheme with respect to that issue.

Affirmed in part and reversed in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT