# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2101

_____

William R.  Cody,                              *
                                               *
    Plaintiff - Appellant,             *
                                               *
    v.                                 *
                                               *
Douglas Weber; Steven W. Lee; Owen             *
Spurrell; Darrell Slykaus; Ben Dearduff        *    Appeal from the United States
Craig Euneau; Robert Keumper; Elmer            *    District Court for the
Miller; Cliff Fontroy; Rodney                  *    District of South Dakota.
Brockhoft; Officer Gatto; Cpl. Lightner;       *
Mike Durfee; Jeff Bloomberg, and other         *
unknown officers, employees, and/or            *
agents of the South Dakota State               *
Penitentiary and/or the South Dakota           *
State Department of Corrections,               *
individually and in their official             *
capacities,                                    *
                                               *
    Defendants - Appellees.            *

_____

Submitted:  May 8, 2000

Filed:  July 9, 2001

_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

William R. Cody appeals from an order of the district court granting summary judgment on claims he has asserted against Douglas Weber and other officers, employees, or agents of the South Dakota State Penitentiary and the South Dakota State Department of Corrections. He argues that the district court erred in its ruling on three of the fourteen claims he brought under 42 U.S.C. § 1983 (Supp. IV 1998) for alleged violations of his civil rights: the search, confiscation, and reading of his legal mail and legal papers by prison officials; the denial of access to his legal papers stored on computer disks; and retaliation for filing this and other lawsuits. We affirm in part and reverse and remand in part.

Because we are reviewing a grant of summary judgment, we will recite the facts in the light most favorable to Cody, the nonmovant. Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991). Cody is serving a life sentence as an inmate in the South Dakota State Penitentiary. He has been incarcerated there since August 1978. During that time, he has filed a number of individual lawsuits and has served as class representative in a class action brought in federal district court. All of the lawsuits challenged the conditions of his confinement, and Cody proceeded pro se in most of them. Cody is, in his words, "a meticulous record keeper," and his notes and records have been useful to him in proving his claims in some of these lawsuits. Cody obtained a word processor in 1982, and has since kept notes, including his "mental impressions, possible legal options, legal theories and conclusions of law," on computer disks rather than on paper. Prison officials encouraged him to do so to diminish the fire hazard caused by storing paper in his cell.

Cody was assured that he would always have access to these "legal papers." He was able to send his word processor outside of the prison for repairs, and he later obtained a new personal computer and supplies for it. By December 1993, Cody had in his cell about one hundred computer disks which stored personal and legal data.

In 1996, the assistant warden at the penitentiary told Cody that the prison's policy on inmate property had changed and that inmates would no longer be allowed to have computers. Cody sought a temporary retraining order and/or preliminary injunction in this action to prevent the removal of his computer, and the district court entered a TRO to that effect. In its order granting defendants' summary judgment motion, the district court dissolved the TRO and ordered that Cody be given two weeks to print any legal documents he wished to retain before he sent his computer out of the prison. When the equipment left the prison, it went to Cody's attorney's office.

Cody complains of several specific instances in which prison guards searched and read his legal papers and letters from his attorneys outside of his presence and of one instance in which a guard opened and returned to him a package he was mailing to his attorney. In addition, Cody alleges that prison guards routinely read his legal papers outside of his presence and without permission.

Finally, Cody recites numerous examples of punitive measures he believes have been imposed on him in retaliation for asserting his legal rights through various lawsuits. These include delayed and denied attorney visits; harsher punishments for rule violations than other inmates received; providing defamatory information about him to a news reporter, which was later broadcast; and subjection to deplorable conditions of confinement.

I.

We review the district court's grant of summary judgment de novo. McKee v. Federal Kemper Life Assurance Co., 927 F.2d 326, 328 (8th Cir. 1991). Cody claims that searching and reading his legal papers and mail outside of his presence violated his constitutional right of access to the courts. The district court concluded that, without a showing of what papers were taken or how this interfered with any particular litigation, Cody's claim fails because he did not demonstrate injury. The district court

further noted that this circuit recognizes a prison's legitimate security interest in such a practice, citing Wycoff v. Hedgepeth, 34 F.3d 614, 618 (8th Cir. 1994).

The general framework for analyzing access to courts claims brought by inmates is set forth in Lewis v. Casey, 518 U.S. 343 (1996). Lewis explains and narrows the Supreme Court's earlier holding in Bounds v. Smith, 430 U.S. 817 (1977), concerning the nature of the right and the requirements for relief. In the context of an allegedly inadequate prison law library, the Court determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to "discover grievances" or to "litigate effectively once in court." 518 U.S. at 354-55. Moreover, an inmate who alleges an access violation is required to show actual injury. Id. at 349, 351.

We are also mindful of the discussion of inmates' constitutional rights with respect to legal mail in Wolff v. McDonnell, 418 U.S. 539, 575-77 (1974), which this court has interpreted to stand for the proposition that mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence. See Jensen v. Klecker, 648 F.2d 1179, 1182 (8th Cir. 1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."). See also Powells v. Minnehaha County Sheriff Dep't, 198 F.3d 711, 712 (8th Cir. 1999) (allegation that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim); Thongvanh v. Thalacker, 17 F.3d 256, 258-59 (8th Cir. 1994) (prison officials' duty to maintain security within prison does not extend to reading inmates' legal mail).

We have previously examined this right of access issue where an inmate complained that his legal papers were taken by prison authorities without permission. In Goff v. Nix, 113 F.3d 887 (8th Cir. 1997), we reviewed prison policies concerning

communications between inmates and their jailhouse lawyers. We determined that a policy that prevented an inmate from retrieving legal papers from the inmate's jailhouse lawyer upon the latter's transfer was a burden on the inmate's right to access to the courts. We concluded that one of the plaintiffs had standing to bring the claim because he alleged the actual injury of being deprived of legal papers critical to his post-conviction proceedings when his jailhouse lawyer was transferred.[1]

> The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts. The taking of legal papers will often (though perhaps not always) interfere with an inmate's right of access to the courts. We will not deny relief on the unsupported assumption that the papers involve only frivolous claims. Therefore, the destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest.

113 F.3d at 892 (internal citations omitted).

In his amended complaint, Cody does allege that he has been injured. He asserts that defendants have obtained an unfair advantage in defending themselves against his claims of constitutional denials and violations by reading his legal papers. He lists all of the various lawsuits he has filed challenging the conditions of his confinement, and he describes a number of instances in which his legal papers have been searched, copied, and read. In one such instance, Cody specifies the date the individual in charge of prison security showed Cody a copy of a letter from an attorney that had been copied without Cody's permission. We conclude that Cody has satisfied the <u>Lewis</u> requirement of alleging actual injury.

---

[1]We further concluded that because there was no apparent reason why that inmate's claim was different than the claims that could be brought by other inmates in similar situations, an injunction against the policy was in order (as opposed to injunctive relief limited to the single inmate). 113 F.3d at 892.

The quoted language from Goff demonstrates that an inmate's right of access to the courts is afforded protection, but that it must be balanced against the institution's legitimate interests. Thus, a prisoner's mere allegation of injury may not be legally sufficient to forestall summary judgment. In this case, however, the prison officials and employees offered no evidence of any penological interest to justify the intrusion into Cody's private legal papers. This case is therefore distinguishable from Wycoff v. Hedgepeth, 34 F.3d 614 (8th Cir. 1994), on which the district court relies. Wycoff involved the search and seizure of an inmate's legal papers after prison officials discovered that he possessed bomb-making directions. Wycoff appealed the district court's finding that prison officials were not in contempt of a consent decree that called for the inmates' presence during searches of their legal papers "[i]n the absence of exigent circumstances." 34 F.3d at 615. The inmate admitted that the discovery constituted exigent circumstances to justify the seizure of his legal papers, but he argued that the exigency no longer existed when his papers were later searched. The panel concluded that the district court did not abuse its discretion in finding exigent circumstances, and its holding is limited to that issue.

Cody has met his burden of showing actual injury, and the prison officials have offered no evidence of any legitimate reason to have searched his legal papers. In fact, they deny reading Cody's legal papers. They assert that the South Dakota Department of Corrections has policies allowing searches of inmates' cells outside the inmates' presence while also prohibiting the reading of inmates' legal mail, but the record indicates that these policies were enacted in 1997. Cody alleges that prison guards searched and read his legal papers in 1996. Prison officials also offer a 1998 affidavit from a penitentiary employee which states that "staff are instructed that they are not to read the legal mail of inmates." The affidavit is written in the present tense and does not indicate when those staff instructions were instituted.

Because Cody created a genuine issue of material fact that his legal papers were searched and read and that he suffered actual injury as a result, he has sufficiently

stated a claim for infringement of his right of access to the courts. In the absence of a justification that the intrusions were reasonably related to a legitimate penological interest, summary judgment should not have been granted. We reverse and remand to the district court on claim nine of Cody's first amended complaint.[2]

## II.

Cody claims a second access-to-the-courts violation occurred when he was forced to give up his personal computer and concomitantly was denied access to the data stored on his computer disks. The district court determined that Cody failed to allege actual injury with sufficient specificity and that his conclusory statements that he needs the data did not create a factual issue sufficient to defeat a motion for summary judgment. The district court noted that Cody was the only inmate at the South Dakota State Penitentiary who continued to have a personal computer, and he allowed Cody two weeks in which to "print off and keep in his cell the pages he believes are essential to his current litigation needs, and make arrangements to have access to other documents via persons outside the [South Dakota State Penitentiary]."

Cody asserts that, without unlimited access to all of the data he has stored, he is being deprived of the "only copies of documents he believes can set him free from the life sentence he is presently serving." He mentions both coram nobis relief under South Dakota law and commutation, but he does not assert that he has a basis or a plan to seek either form of relief.

We do not agree with the district court's analysis of Cody's claim as the equivalent of a claim to a constitutional right to a typewriter. E.g., American Inmate

---

[2]We decline the prison officials' invitation to affirm the entry of summary judgment on the alternative grounds of qualified immunity. The district court did not rule on that issue in the first instance, but may consider the defense upon remand.

Paralegal Assoc. v. Cline, 859 F.2d 59, 61 (8th Cir. 1988) (inmates have no constitutional right of access to a typewriter). We understand Cody seeks to have his personal computer so that he can retrieve and print documents that already exist. However, he still must meet the Lewis requirement of actual injury.

As the Supreme Court noted, the actual injury requirement derives ultimately from the doctrine of standing, 518 U.S. at 349, which directs that courts not get involved unless a constitutional violation has occurred or there is a real and immediate threat of such a violation. Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996). Lewis limits the scope of the right of access to the courts to the filing of an action attacking a sentence or challenging conditions of confinement. Thus, an inmate who alleges that a jail employee took his legal papers containing the names, addresses, and anticipated testimony of witnesses (along with other documents) for use in preparing for his pending criminal trial sufficiently stated a claim for interference with his access to the courts. Tyler v. Woodson, 597 F.2d 643, 644 (8th Cir. 1979). On the other hand, an inmate whose legal papers were removed from his cell because their bulk created a hazard but who was allowed to obtain copies of requested portions and ultimately regain possession of all of the papers could not avoid summary judgment because he did not designate specific facts showing that he suffered prejudice. Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

We agree with the district court's determination that Cody's allegations do not meet the Lewis standard. A vague allegation that any or all of his stored data will "set him free" does not create a genuine issue of material fact. Similarly, the mere mention of the availability of coram nobis relief or commutation does not equate with evidence

that Cody sustained actual injury.[3] We affirm the entry of summary judgment on claim ten of Cody's first amended complaint.

## III.

Finally, Cody alleges that the district court erred in granting summary judgment on his claim that prison officials have retaliated against him for filing and prosecuting lawsuits. Cody alleges a number of specific incidents of retaliatory conduct that have occurred, including disciplinary actions, filing of false rule violation reports, disparate treatment, delayed and denied attorney visits, and the provision of defamatory information about him to a news reporter. The district court stated that Cody did not provide specific examples as to the filing of false rule violation reports or disparate treatment, and that he could not prevail on his claims concerning rule violations because he had in fact been found guilty. See Cowans v. Warren, 150 F.3d 910, 912 (8th Cir. 1998) (inmate who violated prison rule cannot state retaliation claim for discipline imposed).

We disagree with the district court's conclusion that there is no genuine issue of material fact concerning Cody's claims of retaliation. Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct

---

[3]Coram nobis relief under South Dakota law is extremely narrow.

> [C]oram nobis is limited to reviewing a criminal conviction respecting some error in fact (or fundamental jurisdictional error), as opposed to an ordinary error in law, that without the fault of the petitioner was unknown at the time of the questioned proceedings, or unrevealed because of fraud or coercion, without which the judgment would not have been entered, and for which there is no other available remedy.

Gregory v. Class, 584 N.W.2d 873, 878 (S.D. 1998).

would have been proper if motivated by a different reason. <u>Madewell v. Roberts</u>, 909 F.2d 1203, 1206 (8th Cir. 1990). Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable. "The violation lies in the <u>intent</u> to impede access to the courts." <u>Id.</u> at 1207 (emphasis in original). Cody submitted an affidavit setting forth numerous specific incidents and claimed that they were retaliatory. In fact, Cody recites one instance in which a prison employee told him that he had been transferred to the mental health unit to convince him not to "use the system," implying that he was being punished for his legal activities. Because Cody's allegations create a genuine issue of material fact as to whether defendants retaliated against him, summary judgment should not have been granted on claim fourteen of his first amended complaint.

* * * *

For the foregoing reasons, we affirm the district court's entry of summary judgment on claim ten of Cody's first amended complaint. We reverse the entry of summary judgment on claims nine and fourteen and remand to the district court for further proceedings consistent with this opinion.

BEAM, Circuit Judge, concurring and dissenting.

I would affirm this case on the well-reasoned opinion of the district court. Accordingly, I concur in the court's affirmance of the district court's dismissal of appellant's claim ten, <u>ante</u> at 7-9, but dissent from the court's reversal of the district court's dismissal of appellant's claims nine and fourteen, <u>ante</u> at 3-7 and 9-10.

As the court notes, Mr. Cody is a frequent prison litigator headquartered in his cell at the South Dakota State Penitentiary. From there, he appears to have carved out a post-conviction career that includes regularly suing the staff and management of the

prison.[4]  Incredibly, he had accumulated in his cell "about one hundred computer disks," ante at 2, containing thousand of pages of (self-styled) legal documents, "he believes can set him free from the life sentence [for first-degree murder] he is presently serving."  Ante at 7.

Mr. Cody appeals three of the fourteen claims he asserted in his 42 U.S.C. § 1983 case filed in the district court, claims nine, ten and fourteen.  All three of the appealed claims are based upon purported violations of Mr. Cody's constitutional right of access to the courts, a right initially outlined in detail by the Supreme Court in Bounds v. Smith, 430 U.S. 817 (1977).  The access rights delineated in Bounds were further clarified and limited in Lewis v. Casey, 518 U.S. 343 (1996).  The court's opinion correctly notes that when an inmate alleges a Bounds access-to-the- courts violation, as Mr. Cody has done here, he or she must show, as a necessary element of the claim, "actual injury."  Lewis v. Casey, 518 U.S. at 349.  "It is the role of courts to provide relief to claimants . . . who have suffered, or will imminently suffer, actual harm."  Id.  Mr. Cody makes no such showing.[5]  Without such a showing, Mr. Cody

---

[4]See, for example, Cody v. Weber, No. 00-3814, slip op. at 2 (8th Cir. June 25, 2001) (per curiam), a case in which another panel of the court recently affirmed dismissal on  motion for summary judgment wherein Mr. Cody appears to have raised the issue of retaliation, one of the claims which the court now returns to the district court for trial.

[5]A review of the record shows that in response to the motion for summary judgment, Mr. Cody incorporated by reference pleadings that advanced vague allegations that it is "logical to assume" that prison officials read his legal documents, no specific examples of false rules violation reports, and only speculative assumptions that various-named acts were motivated by retaliatory animus.  The district court found that Mr. Cody offered no specific evidence of "actual injury" as required by Lewis and the court does not discuss specific facts presented by Mr. Cody that could lead to a contrary conclusion.

lacks "standing" to assert his access claims. Id. Accordingly, as correctly noted by the district court, Mr. Cody's various claims fail as a matter of law.

The court, in reaching a contrary conclusion with regard to claims nine and fourteen, simply allows Mr. Cody to stand upon bare allegation. But, this is not permitted in the face of a motion for summary judgment. While on summary judgment, a nonmoving party is entitled to a favorable view of the evidentiary record, the party must substantiate its allegations with sufficiently probative evidence to avoid an adverse judgment. Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to" his case, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[6]

The district court found that Mr. Cody did not even "allege what legal papers were confiscated or how such a taking interfered with any litigation he was involved in." Cody v. Weber, No. 99-2101, slip op. at 12 (D.S.D. Feb. 16, 1999). Nor did Mr. Cody establish that a "material fact exists that plaintiff suffered any actual harm in the pursuit of any litigation in which he was involved." Id. Other than reference to Mr. Cody's pleadings, the court, as earlier noted, can refer to no such showing.

_____

[6]Indeed, in a recent opinion, North Dakota State University v. United States, Nos. 00-1545/1546 (8th Cir. June 18, 2001), this court refused to recognize an issue of fact asserted in a summary judgment proceeding, even when the purported fact was advanced through deposition testimony, when the testimony referred to documentary evidence that was not produced. Slip op. at 14. Here, there appears to have been only an initial "verified" pleading which was later amended. No affidavits or depositions offered by Mr. Cody are referred to in the record on appeal or by the court and none of the purported legal papers, false rules violation reports or other retaliatory documents referred to by Mr. Cody in his complaint were produced for examination as nearly as I can tell.

In this regard, I am puzzled by the court's seeming transfer of the burden of making an evidentiary showing to South Dakota. The court states: "Cody has met his burden of *showing* actual injury, and the prison officials have offered no evidence of any legitimate reason to have searched his legal papers." Ante at 6. (Emphasis added.) However, the issue facing Mr. Cody in this case was not lack of exigent circumstances to search and read legal papers but rather "standing" to assert the Bounds claim at all without an evidentiary showing by him of "actual injury" as the term is defined in Lewis. 518 U.S. at 349.

In support of this holding the court appears to cite Goff v. Nix, 113 F.3d 887 (8th Cir. 1997) and Wycoff v. Hedgepeth, 34 F.3d 614 (8th Cir. 1994). In Nix,[7] there was evidence of a "pending claim," 113 F.3d at 889, and an "upcoming trial." Id. at 891. Also, Powells v. Minnehaha County Sheriff Dep't, 198 F.3d 711, 712 (8th Cir. 1999) cited by the court for the proposition that an "allegation that prison officials opened legal mail outside of inmate's presence is sufficient to state a constitutional claim," ante at 4, was dismissed by the district court for failure to state a claim upon which relief may be granted and was not before the court on summary judgment. 198 F.3d at 712. Accordingly, Nix and Powells are not relevant to the issues in this case. Likewise, as noted by the court, the holding in Wycoff is not implicated here. Wycoff involved the violation of a consent decree dealing generally with all searches of legal papers and the case did not directly involve an access-to-the-courts claim. 34 F.3d at 615. More importantly, Wycoff was decided almost two years before the establishment of the standing requirements outlined in Lewis.

In summary, the exigent circumstances showing contemplated by Goff and Wycoff, and allocated to prison officials in such similar situations, have no relevancy to the standing question decided by the district court in this case. Whether or not

---

[7]Nix was not before the court on summary judgment but all issues were decided after a "bench trial." 113 F.3d at 889.

prison officials legitimately or illegitimately searched Mr. Cody's legal papers, or did not search them at all, is of no importance because Mr. Cody's evidence has not advanced beyond bare allegations of injury caused by the claimed search and reading of purported legal papers.

The retaliation claim fails for the same reasons. It is also an access-to-the-courts allegation based upon contentions of delayed, denied or chilled access rights. Again, as noted by the district court, against a litany of purported transgressions by prison officials, Mr. Cody has proffered no evidence of a specific injury. Both the district court and the court note our holding in Cowans v. Warren, 150 F.3d 910 (8th Cir. 1998), in which we said "where an inmate has violated an actual prison rule, no retaliation claim can be stated." Id. at 912. As noted by the district court, Mr. Cody states his false claims allegations in only a conclusory fashion and advances no specific examples of false reports or of violation reports issued by a prison official for which discipline was not imposed. While the court cites Madewell v. Roberts, 909 F.2d 1203 (8th Cir. 1990) for the unremarkable proposition that a retaliation violation "lies in the *intent* to impede access to the courts," id. at 1207, Mr. Cody advances no specific facts from which such intent to impede his access to the courts can be discerned.

Finally, as earlier indicated, I agree with the court's conclusion with regard to claim ten. However, I disagree with the court's rejection of the district court's reasoning with regard to this claim. The district court correctly noted that Mr. Cody has no constitutional right to keep a computer and one hundred computer disks in his cell. The district court likened the claim to one alleging a constitutional right to an in-cell typewriter, a right we summarily rejected in American Inmate Paralegal Association v. Cline, 859 F.2d 59, 61 (8th Cir. 1988). I think the analogy is sound, especially if the typewriter in Cline was used for the same purpose that Mr. Cody has used his computer, that is, to process and store words. The court's rejection of the district court's analogy represents only a difference in degree and not in kind.

-14-

In summary, I think that it is unfortunate that this frequent litigator is now allowed on this record to consume more judicial resources.  The district court arrived at the right result and for the right reasons.  Accordingly, I would affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.