# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-3261

_____

| | | |
|---|---|---|
| Bryan Richard Nei; Alvin King; Paul Leo Amundson, | * * * | |
| Plaintiffs-Appellees, | * * | |
| v. | * * | |
| Robert Dooley, Warden, Mike Durfee State Prison, Springfield, SD; Lisa McFletcher, Unit Manager, Mike Durfee State Prison; Sally Boyd, Head of Special Security at Mike Durfee State Prison, all in their individual capacities and not their official capacities; | * * * * * * * * | Appeal from the United States District Court for the District of South Dakota.  [PUBLISHED] |
| Defendants-Appellants, | * * | |
| Paul Soyars, | * * | |
| Defendant. | * | |

_____

Submitted:  June 18, 2004
Filed:  June 25, 2004

_____

Before MORRIS SHEPPARD ARNOLD, FAGG, and RILEY, Circuit Judges.

_____

PER CURIAM.

Bryan Richard Nei, Alvin King, and Paul Leo Amundson, current or former inmates at the Mike Durfee State Prison in Springfield, South Dakota, brought this civil rights action against the warden, Robert Dooley, and other prison officials, Unit Manager Lisa McFletcher and Special Security Head Sally Boyd. The inmates claimed the prison officials violated their Eighth Amendment rights by failing to protect them from an HIV-positive inmate, Paul Soyars, who assaulted and threatened to infect his fellow inmates. The inmates also asserted McFletcher and Boyd retaliated against Nei and King for bringing the lawsuit by placing them in segregation, and against Nei, King, and Amundson by denying them access to the prison law library. The district court[*] denied the prison officials' motion for summary judgment based on qualified immunity. The prison officials appeal.

We explain the relevant facts in the light most favorable to the inmates, who opposed the officials' motion for summary judgment. Pagels v. Morrison, 335 F.3d 736, 738 (8th Cir. 2003). While incarcerated at the Mike Durfee State Prison, Soyars admitted to inmates and prison staff that he was infected with AIDS. He often threatened inmates that he would infect them with the virus. While cleaning the prison restrooms, Soyars urinated on the floor, spit in the sinks and water fountains, and smeared fecal matter on the floor. In early April of 2000, King approached McFletcher to report he disapproved of the way Soyars "cleaned" the bathroom, and he did not want to live with someone who threatened to expose people to AIDS. Soyars and King got into a fight afterwards. Soyars spit in King's face. Soyars cut his lip, and his blood came into contact with an open wound on King's hand. A few days later, Soyars got into a fight with another inmate and threatened to infect the inmate with AIDS. King and Nei told Boyd and McFletcher about Soyars's threats, fights, and how he would "clean" the restrooms. Nei and King asked the officials to

_____

[*]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

-2-

remove Soyars from the prison. Because prison officials took no action, King filed a grievance later that month asking for Soyars removal. The same day, King obtained signatures from several inmates to initiate a class action lawsuit. Boyd and McFletcher accused King and Nei of initiating an illegal petition drive. Four days later, King received a response from his grievance stating that prison policy prohibited the segregation of infected inmates outside the population. The next day, King filed an appeal. On May 1, King filed a federal complaint asking that Soyars be removed from the prison. McFletcher received an anonymous note the same day, stating Soyars was improperly cleaning the toilets, Soyars claimed he was HIV positive, and Soyars had threatened the note's author. McFletcher concluded either Nei or King wrote the note, and reported to Boyd, who was told by Soyars that he was HIV positive. The next day, during a fight, Soyars pushed Nei and threatened to infect him with AIDS. Some of Soyars's blood went into Nei's mouth, on his body, and on his clothing. Two days later, after the prison received a file stamped copy of the complaint in this action, King and Nei were placed in segregation. Nei filed a grievance asking why he had been placed in the hole. The prison responded he was under investigation and would be in segregation until the investigation was completed. King filed an appeal demanding a explanation for his placement in the hole. King and Nei were released from the hole the next day. In mid June, Soyars got into a fights with Amundson, during which Soyars threatened infection, and a fight with another inmate involving bloodshed. Prison staff were advised of the fights. In late October, Boyd sent an e-mail to other prison officials acknowledging that Soyars admitted he is HIV positive to staff, and during an October fight, Soyars started to bleed, so the other inmate involved would be tested for AIDS because of possible blood exchange. Beginning in the fall of 2000, King, Nei, and Amundson requested access to the inmate law library to research and draft documents for their written complaint. Boyd and McFletcher denied them access. In December, the inmates again requested access to draft a response to the inmates' answer. Boyd and McFletcher again denied them access to the law library.

Qualified immunity protects government officials from lawsuits for their performance of discretionary functions unless their conduct violates a clearly established constitutional right of which a reasonable person would have known. Id. at 739-40. The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates and to protect them from violence by other prisoners. Id. at 740. To prevail on their Eighth Amendment failure-to-protect claim, the inmates must show they are incarcerated under conditions posing a substantial risk of serious harm and the prison officials subjectively knew of and disregarded that safety risk. Id.; Smith v. Arkansas Dep't of Correction, 103 F.3d 637, 644 (8th Cir. 1996).

In this case, the district court concluded the inmates had articulated facts that would establish they were incarcerated under conditions posing a substantial risk of harm to them of contracting the AIDS virus. The district court also concluded that although Boyd and McFletcher denied they knew Soyars was infected with AIDS, the inmates provided affidavits suggesting otherwise. Indeed, in Boyd's October e-mail, she stated Soyars readily admitted he was HIV positive to staff and documented that while fighting with another inmate, Soyars began to bleed. The district court found that at the very least, Boyd and McFletcher knew Soyars might have AIDS. The court concluded that, viewing the evidence in the light most favorable to the inmates, there was sufficient evidence from which a jury could find that Boyd and McFletcher knew Soyars was infected with AIDS, that Soyars was threatening to infect other inmates and was engaging in assaultive behavior towards other inmates, and that Boyd and McFletcher failed to respond to that risk reasonably. As for the warden, the district court found that because he read and responded to the grievances, a jury could find the warden knew Soyars had AIDS, knew Soyars had threatened to infect other inmates through assault, and failed to respond reasonably to the risk in violation of the prison's own policy.

The officials argue none of the prison officials had subjective knowledge that Soyars posed a substantial risk of harm to each inmate. Viewing the facts in the light most favorable to the inmates, we disagree. There was evidence that Soyars fought with King, Nei, and Amundson, and the fights involved fluid exchange, threats of infection, or both. Besides, "[w]e must accept the summary judgment facts as described by the district court because evidentiary determinations are not presently appealable." Moran v. Clark, 359 F.3d 1058, 1060 (8th Cir. 2004). The officials also contend they acted reasonably as a matter of law and thus did not violate the inmates' Eighth Amendment rights. Viewing the facts in the light most favorable to the inmates, we conclude the officials did not respond to the threat of harm in an objectively reasonable way. Indeed, the officials did little to address the situation for months after being made aware of the circumstances.

As for the inmates' claim that they were retaliated against for filing their lawsuit by being denied access to the prison law library, the officials contend the district court should have construed the claim as one of denied access to the courts, requiring proof of actual injury, rather than one of retaliation. We disagree. "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." Cody v. Weber, 256 F.3d 764, 770-71 (8th Cir. 2001). To be actionable, the retaliatory conduct itself need not be unconstitutional because the constitutional violation lies in the intent to impede access to the courts. Id. The district court applied the proper standard to the inmates' retaliation claim based on denial of access to the law library.

Regarding the inmates' claim that the officials retaliated against the inmates for filing their lawsuit by placing them in segregation, the officials argue they merely transferred the inmates, and did so to investigate whether they were soliciting signatures in violation of prison rules, rather than in retaliation for filing their lawsuit. Because the inmates' allegations create a genuine issue of material fact about whether the officials retaliated against them, the district court properly denied summary

judgment on this claim.  <u>Id.</u>  We reject the officials' argument that the issue of fact triggers application of the retaliatory transfer standard rather than the retaliatory discipline standard.  <u>See</u> <u>Goff v. Burton</u>, 7 F.3d 734, 736-39 (8th Cir. 1993) (comparing claims of retaliatory transfer of inmate to a different, maximum security facility and claim of retaliatory discipline).

Having carefully considered all of the officials' assertions, we affirm the district court's denial of qualified immunity.

_____