# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1735

_____

Rasheen Aldridge

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; John Hayden, Col., in his individual and official
capacities; William Olsten, Officer, in his individual and official capacities

*Defendants - Appellees*

_____

No. 22-1910

_____

Jazmin Franks

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; John Hayden, Col., in his individual capacity;
William Olsten, Officer, in his individual capacity

*Defendants - Appellees*

_____

No. 22-2213

_____

Crystal Brown

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri; John Hayden, Col., in his individual and official
capacities; William Olsten, Officer, in his individual and official capacities

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri
_____

Submitted: January 10, 2023
Filed: July 28, 2023
_____

Before GRASZ, MELLOY, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

Appellants Rasheen Aldridge, Jazmin Franks, and Crystal Brown were each
pepper-sprayed by Police Officer William Olsten while participating in a protest in
downtown St. Louis. Each of them sued Officer Olsten, Chief of Police John
Hayden, and the City of St. Louis, alleging First Amendment retaliation and
excessive force claims, as well as various other federal and state law claims. In each
case, the district court[1] granted summary judgment in favor of the city officials on
all the federal claims and declined supplemental jurisdiction on the state law claims.
We consolidated the cases and, having jurisdiction under 28 U.S.C. § 1291, affirm.

_____

[1]The Honorable Rodney W. Sippel, then Chief Judge for the Eastern District
of Missouri, now United States District Judge for the Eastern District of Missouri;
the Honorable Stephen R. Clark, then United States District Judge for the Eastern
District of Missouri, now Chief Judge for the Eastern District of Missouri; and the
Honorable John M. Bodenhausen, United States Magistrate Judge for the Eastern
District of Missouri, to whom the case was referred for final disposition by consent
of the parties pursuant to 28 U.S.C. § 636(c).

# I. Background

Following the acquittal of a police officer on first-degree murder charges, protests occurred around St. Louis over several weeks. During one such protest in the downtown area, St. Louis Police Department officers tased and arrested one of the protestors. A group of other protestors, including the three appellants, began to follow the officers as they led the arrestee away from the scene. Various video images of the protest confirm that while members of the crowd verbally questioned and sometimes taunted officers, they generally remained non-violent.

Officer Olsten was one of the numerous officers at the scene. Various officers can be heard on the video recordings repeatedly directing the group of protestors to "get back" as Officer Olsten and others attempted to lead the arrested protestor away. At this point, protestor Amir Brandy shouted "I'm going to f*** you up." In response, Officer Olsten stepped toward Brandy and said, "well, come on, f*** me up then" and "keep coming." After Brandy noticed a pepper spray fogger in Officer Olsten's hand, Brandy yelled, "If you put that s*** in my face, I'll f*** you up." He then proceeded to call Officer Olsten a "p**** a** white boy." Appellant Aldridge, who was standing next to Brandy, then asked Officer Olsten, "Y'all f***ing tase [the arrested protestor]?" Officer Olsten replied, "I didn't tase him."

Next, an unidentified protestor shouted out. The appellants claim the protestor shouted, "shut this motherf***er down," while the appellees claim the protestor said something like, "shoot these motherf***ers." Almost immediately following this unidentified protestor's shout, Officer Olsten quickly looked to his right and then without warning deployed his pepper spray on the crowd. Although Aldridge and Brandy were immediately in front of Officer Olsten, other members of the crowd were also impacted because Officer Olsten sprayed side to side in a sweeping motion. Officer Olsten did not arrest any protestors after he deployed his pepper spray. Each appellant sued Officer Olsten, Chief of Police John Hayden, and the City of St. Louis (collectively, "City Officials") alleging various claims including,

as most relevant to this appeal, a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983.

In the *Aldridge* case, the district court granted summary judgment to Officer Olsten on the First Amendment retaliation claim because "Aldridge base[d] his First-Amendment-retaliation claim on an allegation of excessive force," and the district court had already granted summary judgment to Officer Olsten on the excessive force claim. The district court also held the *Monell* claim[2] must fail because there was no individual liability, and it declined to exercise supplemental jurisdiction over the state law claims.

In both the *Franks* and *Brown* cases, the district court granted summary judgment on the First Amendment retaliation claims because Franks and Brown failed to demonstrate Officer Olsten deployed his pepper spray in response to *their* actions. On the *Monell* claims by Franks and Brown, the district court also granted summary judgment to the City because municipal liability could not attach without a finding of individual liability. Finally, the district court declined to exercise jurisdiction over state law claims in either case.

## II. Analysis

We review a district court's grant of summary judgment based on qualified immunity de novo. *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [meaning] there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). We view the facts in the light most favorable to the nonmoving parties, granting them the "benefit of all reasonable inferences." *Goffin v. Ashcraft*, 977 F.3d 687, 690–91 (8th Cir. 2020).

---

[2]*See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

The City Officials are "entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff[s], demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Bell v. Neukirch*, 979 F.3d 594, 602 (8th Cir. 2020) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014)).

Aldridge, Franks, and Brown each raise three arguments in support of reversal: Officer Olsten retaliated against them in violation of the First Amendment; the City is liable under *Monell*; and the district court should have exercised supplemental jurisdiction over their state law claims. We address these arguments in turn.

## A. First Amendment Retaliation

The appellants argue Officer Olsten deployed his pepper spray in retaliation for their protesting against the police. "The First Amendment prohibits laws 'abridging the freedom of speech.'" *Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259 (2022) (quoting U.S. Const. amend. I). Thus, "as 'a general matter,'" the First Amendment "prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Id.* (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)). "To prevail on their retaliation claim, the plaintiffs must show that 'they engaged in protected [First Amendment] activity.'" *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023) (alteration in original) (quoting *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 837 (8th Cir. 2021)). "If they can make that showing, then the focus shifts to whether the officers 'took [an] adverse action . . . that would chill a person of ordinary firmness from continuing in the [protected] activity.'" *Id.* (alterations in original) (quoting *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017)). Finally, the plaintiffs must prove the officers "would not have taken the adverse action but for harboring 'retaliatory animus' against the plaintiff[s] because of [the] exercise of

[their] First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (quoting *Nieves*, 139 S. Ct. at 1722).

We focus our attention on the third element[3]—whether Officer Olsten deployed his pepper spray in retaliation for the appellants' exercise of their First Amendment right to protest. "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). In other words, the plaintiffs must demonstrate they were "singled out" due to their protected expression. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). "If the response was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'" *Mitchell*, 28 F.4th at 896.

Aldridge focuses his attention on the fact that he asked Officer Olsten a question shortly before he was pepper sprayed. While others in the crowd, such as Brandy, were more verbally antagonistic to Officer Olsten, the only question in the record asked by Aldridge was, "Y'all f***ing tase him?," referring to another protestor's arrest. Officer Olsten responded, "I didn't tase him." After this brief exchange, an unknown protestor can be heard shouting something. Officer Olsten argues this was the precipitating incident for deploying the pepper spray as he believed this unknown protestor shouted, "shoot these motherf***ers." Aldridge, however, argues Officer Olsten was "singling out those protestors standing in front of him and doing so because they were questioning the police and protesting their activities." Aldridge also points out that Officer Olsten "made a wide arc" and "targeted people who were within a 20-foot diameter," which Aldridge believes

---

[3]The City Officials do not dispute that Officer Olsten's deployment of pepper spray satisfies the ordinary firmness test but the City Officials do contend the appellants were not engaged in protected First Amendment activity immediately preceding Officer Olsten's use of pepper spray.

demonstrates Officer "Olsten was using the pepper spray for punitive reasons rather than for his protection."

It is true that Aldridge was standing near Officer Olsten and that he asked Officer Olsten a question shortly before Officer Olsten deployed his pepper spray. But "[g]enerally, 'more than a temporal connection is required to present a genuine factual issue on retaliation.'" *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) (quoting *Peterson v. Scott Cnty.*, 406 F.3d 515, 524 (8th Cir. 2005)). There is no evidence in the record of Officer Olsten indicating animus toward Aldridge or singling him out. From the video it is evident that Officer Olsten did make a "wide arc" while deploying the pepper spray, but this fact supports Officer Olsten's argument that no individual was targeted for his or her speech. Rather, this fact creates an "obvious alternative explanation" for the use of force, that Officer Olsten was utilizing the pepper spray as a crowd control mechanism rather than retaliating against a particular protestor. *Laney v. City of St. Louis*, 56 F.4th 1153, 1158 (8th Cir. 2023) (quoting *Auer v. City of Minot*, 896 F.3d 854, 860–61 (8th Cir. 2018)).

Franks and Brown argue that whether Officer Olsten's motivation was retaliatory in nature is a question of fact for the jury. They contend the district court in each case erred by essentially requiring them to "provide specific proof of [Officer Olsten's] improper motive," which *Quraishi* forbids. 986 F.3d at 838. To begin, *Quraishi* was an interlocutory appeal, which means we had no jurisdiction to review the district court's determination about what factual issues were genuine and we were limited to legal questions. *Id.* at 834–35. While the *Quraishi* panel did not require "specific proof" of the officer's improper motive, it did confirm that the plaintiffs' First Amendment activity must "motivate" the officer's conduct. *Id.* at 838. We emphasized that there were other protestors in the immediate vicinity, but only the reporters filming the scene were tear-gassed. *Id.* Because the officer "singled out" the reporters, his motive was not "so free from doubt as to justify taking it from the jury." *Id.* (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

-7-

The case at hand is distinguishable. In *Quraishi*, there was evidence the officers singled out the reporters by intentionally pepper spraying only them while avoiding all other protestors in the area. 986 F.3d at 838. Here, by contrast, the appellants admit that "every other non-police officer in the vicinity[] was actively involved in a protest" and that Officer Olsten "mov[ed] his arm side to side and indiscriminately spray[ed] numerous protestors." One cannot simultaneously single out the appellants and "indiscriminately" spray the crowd. And there is no evidence in the record that either Franks or Brown had any interaction with Officer Olsten, that Officer Olsten was aware of their presence, or that either did anything to differentiate themselves from the other protestors in the crowd. While Franks argues she was filming the protest, there is no evidence Officer Olsten observed her filming or deployed pepper spray in retaliation for her doing so.

Regardless of whether Officer Olsten's action was appropriate or reasonable[4] under the circumstances, the lack of evidence causally connecting Officer Olsten's

---

[4]The district court concluded that because "Aldridge base[d] his First-Amendment-retaliation claim on an allegation of excessive force by Officer Olsten[,] . . . the Court's analysis above regarding Aldridge's Fourth-Amendment claim applies to his First-Amendment claim as well." The district court then held that Aldridge's First Amendment claim must fail as "Officer Olsten's use of pepper spray was objectively reasonable . . . ." However, the analyses for First Amendment claims and Fourth Amendment claims are distinct. For a retaliation claim, the issue presented is not whether the officer's use of force was "reasonable," but rather whether the use of force was retaliatory. "[R]etaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). A police officer who singles out a citizen for retaliatory use of force because of protected expression may be held liable if the adverse action causes an actionable injury that would chill a person of ordinary firmness from continuing in the protected activity. *See Baribeau*, 596 F.3d at 481. Conversely, even if an officer makes an unreasonable mistake regarding the use of force, he is not liable for First Amendment retaliation unless a plaintiff proves the officer was motivated by retaliatory animus. *See Mitchell*, 28 F.4th at 897–98; *Baribeau*, 596 F.3d at 481. Because we may affirm the grant of summary judgment on any ground supported by the record, *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958

adverse action of using pepper spray to the appellants' protected expression is fatal to the retaliation claims. The district court's grants of summary judgment in favor of Officer Olsten are affirmed.

## B. *Monell* Claims

Each appellant additionally challenges the dismissal of their claims against the City of St. Louis under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "[U]nder § 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). "They are not vicariously liable under § 1983 for their employees' actions." *Id.* We have "consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Moore v. City of Desloge*, 647 F.3d 841, 849 (8th Cir. 2011) (quoting *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005)). Therefore, because there is no evidence to support each of the appellants' First Amendment retaliation claims, we also affirm the district court's grant of summary judgment in favor of the City of St. Louis on the *Monell* claims.

## C. Supplemental Jurisdiction

Finally, the appellants argue their state law claims should be reinstated after the district court declined to exercise supplemental jurisdiction. "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Since the decision to exercise supplemental jurisdiction over the remaining state law claims is discretionary rather than jurisdictional, we review for abuse of discretion. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011). District courts should consider such factors as

(8th Cir. 2019), we affirm summary judgment on Aldridge's claim under the First Amendment retaliation standard.

"the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims . . . ." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (quoting *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004)). We detect no abuse of discretion here. Appellants provide no compelling reason to second guess the district court's exercise of discretion. We affirm the dismissal of each appellant's state law claims.

### III. Conclusion

For the reasons stated above, we affirm the judgments of the district court against the appellants.

_____