# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3462

_____

| | | |
|---|---|---|
| Archie Bear, et al., | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Walter Kautzky, et al., | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: June 13, 2002

Filed: October 4, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Iowa prison officials appeal the district court's[1] grant of a preliminary injunction permitting four inmates at the Iowa State Penitentiary (ISP) to communicate with other inmates serving as "jailhouse lawyers," and to use a discontinued method of inmate-to-inmate legal correspondence known at ISP as the red star system, pending trial of plaintiffs' claims that a new, more restrictive policy deprives them of effective access to the courts. We review the district court's grant

_____

[1]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

of preliminary injunctive relief for abuse of discretion. <u>Goff v. Harper</u>, 60 F.3d 518, 520 (8th Cir. 1995). Because defendants made no showing that an absolute ban on inmate legal correspondence serves a legitimate penological purpose, and no showing that these plaintiffs or their jailhouse lawyers misused the former system, we conclude the district court did not abuse its discretion in granting the injunction.

Prior to July 1, 2001, ISP officials permitted inmates to provide legal services to each other. ISP maintained the red star system to facilitate correspondence between inmates in the same prison unit regarding legal matters. The red star system for screening and delivering legal mail is described in <u>Goff v. Nix</u>, 113 F.3d 887, 888 (8th Cir. 1997). On July 1, 2001, ISP officials adopted a new policy banning inmates from providing legal services to each other, eliminating the red star system, and directing inmates to seek legal assistance from a private attorney under contract with ISP. Two groups of inmates filed actions challenging the new policy under 42 U.S.C. § 1983 and moved the district court for a preliminary injunction enjoining its enforcement *pendente lite*. The court consolidated the two actions and, following an evidentiary hearing, granted the requested injunction in favor of four plaintiffs: Archie Bear, William Stringer, Michael McBride, and Romeo Hardin.[2]

The new ISP policy impacts two frequently-litigated issues -- the extent to which an inmate has a First Amendment right to communicate with other inmates, and the boundaries of an inmate's constitutional right of access to the courts. As to the first, in <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987), the Supreme Court held that, because inmates retain First Amendment free speech rights, a prison regulation limiting correspondence between inmates at other correctional institutions "is valid

---

[2]The fifth plaintiff, Thomas Overton, seeks to continue serving as a jailhouse lawyer. The district court properly denied him a preliminary injunction on the ground that he has not demonstrated the requisite irreparable injury because he has no constitutional right to provide legal assistance to other inmates. <u>See</u> <u>Gassler v. Rayl</u>, 862 F.2d 706, 707-08 (8th Cir. 1988).

if it is reasonably related to legitimate penological interests." As to the second, in Lewis v. Casey, 518 U.S. 343, 351 (1996), quoting Bounds v. Smith, 430 U.S. 817, 825 (1977), the Court confirmed that inmates have a constitutional right of access to the courts that obligates prison officials to provide *some* means, such as a prison law library or a legal assistance program, "for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" In Shaw v. Murphy, 532 U.S. 223 (2001), the Court helped define the interplay between these two issues by ruling that communications between inmates about legal matters are not entitled to greater constitutional protection than other communications -- the deferential Turner standard applies.

In this case, plaintiffs allege that the new ISP policy effectively denies them access to the courts. At the preliminary injunction hearing, the four plaintiffs testified that they have post-conviction proceedings pending or planned, that they do not have the knowledge or skill needed to pursue these claims without legal assistance, and that they either were receiving effective assistance from jailhouse lawyers or seek to obtain such assistance for these specific claims. This testimony satisfied, at least for preliminary injunction purposes, the requirement that an inmate plaintiff demonstrate actual injury, that is, "that the alleged shortcomings in the [prison's] library or legal assistance program hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 351; see Johnson v. Avery, 393 U.S. 483, 501-02 (1969) (White, J., dissenting). Regarding the ISP's new policy of making a contract attorney available, one plaintiff testified that the attorney has a conflict of interest, another testified that he tried unsuccessfully for one year to meet with that attorney, and a third testified that the attorney knew nothing about criminal law and was unable to provide research assistance, conduct investigations, or file papers.

Defendants presented no testimony or documentary evidence at the hearing.

In exercising its discretion to grant a preliminary injunction, the district court applied the familiar four-part test adopted in <u>Dataphase Sys., Inc. v. C L Sys., Inc</u>, 640 F.2d 109 (8th Cir. 1981). First, the court concluded that the four plaintiffs satisfied the irreparable injury requirement because they risked "losing the ability to file meaningful challenges to their convictions or conditions of confinement."[3] Second, while acknowledging that defendants have a "strong interest in maintaining security and order at ISP" and that inmates have been known to abuse jailhouse lawyer systems, the court concluded that the balance of harms tips in plaintiffs' favor because defendants presented no evidence that continued legal communications during the pendency of these proceedings would cause harm at ISP. Third, given the lack of evidence from defendants addressing the <u>Turner</u> factors, the court concluded that plaintiffs "may well prevail on the merits" because they are "trying to bring nonfrivolous challenges to their convictions and to the conditions of their confinement [and do] not have the means to do it themselves." Finally, assessing the public interest factor, the court concluded that protecting constitutional rights by maintaining the status quo for a handful of inmates outweighed the public interest "in minimizing court interference in the orderly and secure running of the prison system."

On appeal, defendants argue that plaintiffs have shown no irreparable injury because three of them have appointed counsel for their pending habeas cases. Regarding plaintiffs' likelihood of success on the merits, defendants argue the right of access to the courts is not unlimited, there is no constitutional requirement to provide inmate-to-inmate legal communications, and ISP's providing of a contract attorney to assist inmates "satisfies the requirement of a person trained in the law." Therefore, the district court's preliminary injunction is an excessive intrusion upon the public interest in the orderly and secure running of the prison system.

---

[3]Consistent with <u>Lewis v. Casey</u>, 518 U.S. at 354-55, the district court limited its preliminary injunction to plaintiffs' correspondence regarding challenges to their convictions and conditions of confinement.

Our difficulty with this argument is that it ignores the interplay between the First Amendment and right-of-access issues. We agree there is no absolute First Amendment right to communicate with other inmates about legal or other matters. Thus, in Goff v. Nix, 113 F.3d at 891, we upheld ISP's ban on legal correspondence between inmates located at different facilities because defendants made a sufficient showing that the restraint was reasonably related to a legitimate penological interest. But Goff is distinguishable from this case in two critical respects. First, plaintiffs in this case allege that ISP has imposed a total ban on all inmate legal communications, and they presented evidence that they have no satisfactory alternative way of obtaining needed legal assistance to pursue specific post-conviction claims. Second, and even more important, defendants introduced no evidence justifying the new policy under the deferential Turner standard, despite the Supreme Court's repeated caution that inmates do have First Amendment rights and therefore free speech restrictions must be justified by legitimate penological concerns.

As we explained in Goff v. Nix, 113 F.3d at 892, when a regulation restricting inmate legal communication is challenged, the Turner factors must be weighed in a manner that takes into account any impact on the inmate's right of access to the courts. But courts must still defer to prison officials' reasonable penological decisions. In Bounds and Lewis, the Supreme Court emphasized that there is no one prescribed method of ensuring inmate access to the courts. A prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices, so long as there is no actual harm to the access rights of particular inmates. See Lewis, 518 U.S. at 351; cf. Christopher v. Harbury, 122 S. Ct. 2179, 2185 (2002).

In this case, defendants may well present sufficient evidence at trial to justify the new ISP policy under the Turner standard as it applies in access-to-the-courts cases. Indeed, the Supreme Court has repeatedly noted the legitimate penological interests in restricting inmate-to-inmate correspondence, including communications

regarding legal matters and the activities of jailhouse lawyers.  See Shaw, 523 U.S. at 231; Turner, 482 U.S. at 91-93; Johnson, 393 U.S. at 488, 499-500.  But on this record, we conclude the district court carefully applied the Dataphase factors and did not abuse its discretion in granting a limited preliminary injunction in favor of the four plaintiffs.

The court's order of September 26, 2001 is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.