Duane C. WHITE, on behalf of all similarly situated prisoners in Anamosa State Penitentiary, and all similarly situated prisoners under the supervision of the Iowa Department of Corrections, Plaintiff,

v.

Walter L. KAUTZKY, Director of the Iowa Department of Corrections, and John F. Ault, Warden of Anamosa State Penitentiary, Defendants.

No. C 02–0088–MWB.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

July 3, 2003.

MEMORANDUM OPINION AND OR-
DER REGARDING REPORT AND
RECOMMENDATION OF MAGIS-
TRATE JUDGE

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1056
 A. Plaintiff's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1056
 B. The Report and Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1056
 C. White's Objections And The Order To Supplement . . . . . . . . . . . . . . . . . . . . . .1057
 D. White's Supplemental Affidavit And Arguments . . . . . . . . . . . . . . . . . . . . . . . .1058

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1058
 A. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1058
 B. Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1059
 C. The Class Action Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1060
 D. White's Individual Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1060
 1. Elements of an "access to the courts" claim . . . . . . . . . . . . . . . . . . . . . . .1060
 a. "Opportunity to present claims" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1060
 b. "Actual injury" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1061
 2. Analysis of White's claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1061
 a. "Opportunity to present claims" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1061
 b. "Actual injury" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1062

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1063

## I. INTRODUCTION

### A. Plaintiff's Claims

In this action, plaintiff Duane White asserts "access to the courts" claims on behalf of himself and members of a class of inmates at the Anamosa State Penitentiary (ASP). The class claim is based on the failure of the Iowa Department of Corrections to keep the law library at the ASP up to date and instead switching to a system relying on "contract attorneys" to provide legal assistance to inmates. White's individual claim is based on the alleged failure of the "contract attorneys" to assist him with research to determine whether or not he has a viable claim for post-conviction relief. As the potential basis for post-conviction relief, White contends that Iowa officials violated Iowa's version of the Uniform Criminal Extradition Act in transferring him back and forth between Iowa and South Dakota before he pleaded guilty to

charges in Iowa. White contends that the extradition violations may have deprived Iowa courts of jurisdiction to convict him. White contends that he needed advice or research as to the merits of his claim—that is, he could not risk simply filing for post-conviction relief—because, pursuant to the terms of his plea agreement, filing a meritless post-conviction relief application would have allowed the prosecutor to reinstate additional charges bearing substantial additional penalties.

### B. The Report and Recommendation

This matter comes before the court pursuant to the March 21, 2003, Report and Recommendation by United States Magistrate Judge Paul A. Zoss. In his Report and Recommendation, Judge Zoss recommends that summary judgment be granted in the defendants' favor on White's individual and class claims of denial of access to the courts.

More specifically, Judge Zoss noted that White had not resisted the defendants' motion for summary judgment on his purported class action claims. Judge Zoss concluded that, because the motion was properly supported and unresisted as to the class action claims, the defendants' motion for summary judgment concerning those claims should be granted. As to White's individual claim of denial of access to the courts, Judge Zoss concluded that White has failed to show how the current legal assistance system at the ASP fails to meet the guarantees that an inmate have " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)). Judge Zoss's conclusion in this regard was based on his finding that White admitted that the ASP contract attorney offered him a post-conviction relief application form, his attorney in the present action advised him to complete the post-conviction relief application and send it to the court immediately, and White was able to file for post-conviction relief in state court before the statute of limitations ran, but he made the decision to forego filing because of the possibility that several dismissed charges would be reinstated if he filed for post-conviction relief. Judge Zoss opined that White's "[m]ere dissatisfaction with the legal system by which assess [sic] to the courts is provided is not sufficient to establish a constitutional violation." Report and Recommendation at 11. Judge Zoss also concluded that White has alleged no facts suggesting an "actual injury"; rather, he had alleged only a "speculative" injury. This was so, Judge Zoss concluded, because prior to being paroled to the State of South Dakota on a detainer, White never attempted to file a post-conviction relief application before the statute of limitations ran.

## C. White's Objections And The Order To Supplement

White was granted an extension to and including May 2, 2003, to file any objections to the Report and Recommendation, and he filed his objections on that date. White made no objection to that part of Judge Zoss's Report and Recommendation recommending summary judgment in the defendants' favor on his class action claim. However, White did object to Judge Zoss's conclusions that summary judgment should also be granted in the defendants' favor on his individual claim of denial of access to the courts. White objects to Judge Zoss's conclusions regarding his individual claim on the ground that there are material facts in dispute. Specifically, he contends that, at the very least, there are genuine issues of material fact that the Department of Corrections has failed to provide any way for him to research and determine if he should file a post-conviction relief application, where the consequence of filing such an application, pursuant to the terms of his plea agreement, might be reinstatement of charges carrying the potential of an additional sentence of one hundred and twenty-five years. He contends that the legal assistance system at the ASP prevented him from filing a post-conviction relief application, because he needed to be very sure, in light of the potential consequences of filing such an application, that the application had merit.

In an order dated May 9, 2003, the court found that the record was inadequate on the issue of whether or not White has suffered an "actual injury," an essential element of his "access to the courts" claim, to dispose of either the objections to the Report and Recommendation or the underlying summary judgment motion by the defendants. Therefore, the court directed

White to supplement the record with any evidence and argument that he believes generates a genuine issue of material fact that he has suffered "actual injury" in support of his "access to the courts" claim. The court likewise stated that defendants would thereafter have the opportunity to file any supplemental reply.

On June 16, 2003, after an extension of time to do so, White's counsel submitted a supplemental brief concerning White's alleged "actual injury," and White filed an affidavit in support of his contentions on June 19, 2003.[1] The defendants, however, filed no timely reply. Consequently, the defendants' motion for summary judgment, Judge Zoss's Report and Recommendation, and White's Objections are now fully submitted for the court's consideration.

### D. White's Supplemental Affidavit And Arguments

In his Supplementary Memorandum, White attempts to amplify his contentions in support of his individual "access to the courts" claim. He asserts that the State has created a liberty interest in the requirements for extradition, and that he has a nonfrivolous claim that the requirements of the extradition statute were repeatedly violated. In his supplemental affidavit, White avers that he was transferred from Iowa to South Dakota without ever being presented with any paperwork or a governor's warrant, without an appearance before any Iowa judge, without access to counsel, without the opportunity to file a petition for a writ of *habeas corpus*, and without signing a waiver of extradition proceedings. Further, he contends that the legal assistance system at the ASP was inadequate to allow him to research the complex issue of the viability of his claim concerning violations of the extradition statute. More specifically, White contends that "[t]he injury here is failure to allow

[him] to research this issue and have an opportunity to present this issue to the court." Supplementary Memorandum at 2. Although White argues that Judge Zoss made much of the fact that White had been advised by counsel in the present matter to file his post-conviction relief application, that advice was not particularly wise in light of the consequences of filing an unsuccessful action for post-conviction relief.

## II. LEGAL ANALYSIS

### A. Standard Of Review

■ The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to

---

1. An unsigned copy of the affidavit accompa- nied counsel's supplemental brief.

which objection is made." 28 U.S.C. § 636(b)(1). Therefore, portions of the proposed findings or recommendations to which no objections are filed are reviewed only for "plain error." *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

## B. Standards For Summary Judgment

In the context of a report and recommendation on a motion for summary judgment, it is also well to keep in mind the standards for summary judgment. As this court has explained on a number of occasions, applying the standards of Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick,* 90 F.3d at 1377 (same). Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.,* are "material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

### C. The Class Action Claim

White does not object to Judge Zoss's recommendation that the defendants' motion for summary judgment be granted as to White's class action claims. The court finds no "plain error" in that portion of Judge Zoss's Report and Recommendation. *See Griffini*, 31 F.3d at 692 ("plain error" review is appropriate for recommended findings and conclusions to which no objections are made). Therefore, that portion of Judge Zoss's Report and Recommendation regarding the class action claims will be accepted and the defendants' motion for summary judgment on the class action claims will be granted.

### D. White's Individual Claim

The sticking point, however, is whether or not the court should also accept Judge Zoss's recommendation for summary judgment in the defendant's favor on White's individual claim, where White *has* objected to the findings and conclusions underlying that recommendation, and *de novo* review is required. *See, e.g., Hosna*, 80 F.3d at 306 (*de novo* review is required where objections have been made). The court finds that a close question is presented on whether or not White has generated genuine issues of material fact on the essential elements of his individual "access to the courts" claim. *See* FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *accord Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### 1. Elements of an "access to the courts" claim

 As this court explained in its order to supplement the record, to succeed on an "access to the courts" claim, a plaintiff must show that he was denied " 'a

reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' " *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)), and that he or she suffered "actual injury," *i.e.*, "that a non-frivolous legal claim had been frustrated or was being impeded." *Id.* at 351–53, 116 S.Ct. 2174; *accord Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir.2001). In *Cody v. Weber*, 256 F.3d 764 (8th Cir.2001), the Eighth Circuit Court of Appeals noted that

> *Lewis* explains and narrows the Supreme Court's earlier holding in [*Bounds*] concerning the nature of the right and the requirements for relief. In the context of an allegedly inadequate prison law library, the Court determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to "discover grievances" or to "litigate effectively once in court." 518 U.S. at 354–55, 116 S.Ct. 2174. Moreover, an inmate who alleges an access violation is required to show actual injury. *Id.* at 349, 351, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606.

*Cody*, 256 F.3d at 768.

### a. "Opportunity to present claims"

As to the "reasonably adequate opportunity to present claims" requirement, the Eighth Circuit Court of Appeals recently explained,

> In *Bounds [v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977),] and *Lewis [v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996),] the Supreme Court emphasized that there is no one prescribed method of ensuring inmate access to the courts. A prison

system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices, so long as there is no actual harm to the access rights of particular inmates. *See Lewis,* 518 U.S. at 351, 116 S.Ct. 2174; *cf. Christopher v. Harbury,* 536 U.S. 403, 412, 122 S.Ct. 2179, 2185, 153 L.Ed.2d 413 (2002).

*Bear v. Kautzky,* 305 F.3d 802, 806 (8th Cir.2002). Thus, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds,* 430 U.S. at 825, 97 S.Ct. 1491).

#### b. *"Actual injury"*

 As to the "actual injury" requirement, the inmate must show "'that the alleged shortcomings in the [prison's] library or legal assistance program hindered his efforts to pursue a legal claim.'" *Bear,* 305 F.3d at 804 (quoting *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174). As the Supreme Court explained more fully in *Lewis,*

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary. Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," *id.,* at 823, 97 S.Ct. at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. *Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.*

*Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 (emphasis added). Because the "actual injury" requirement applies only to frustration of "a *nonfrivolous* legal claim," the Eighth Circuit Court of Appeals concluded that an inmate's "access to the courts" claim failed where he "ha[d] not made a showing that either of his dismissed cases was nonfrivolous." *Moore,* 266 F.3d at 933 (emphasis added).

### 2. *Analysis of White's claim*

#### a. *"Opportunity to present claims"*

 This court must respectfully disagree with Judge Zoss's conclusion that White has failed to show—or more properly, failed to generate a genuine issue of material fact—that the legal assistance system at the ASP did not provide him with "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds,* 430 U.S. at 825, 97 S.Ct. 1491). That is not to say that the legal assistance system, involving contract attorneys, is *necessarily* so flawed that it fails to provide meaningful access to the courts. Again, "there is no one prescribed method of ensuring inmate access to the courts." *See Bear,* 305 F.3d at 806.

Moreover, had the contract attorneys provided White with the services required

under the contract with the Iowa Department of Corrections, White's "access to the courts" claim would almost undoubtedly fail on this first requirement. The contract provides, *inter alia*, that the contract attorneys "will assist offenders in the correctional facility ... who seek legal advice or wish to file pleadings in the following areas: ... Petitions for post-conviction relief...." (*See* Defendants' Appendix, Doc. No. 17, p. 30, ¶ 1). The contract also provides that the contract attorneys "will ... [c]onfer with individual offenders about the legal matters listed above [and][a]dvise the offender about the merits or lack of merit of any proposed litigation and the proper parties thereto...." *Id.* at ¶ 2. Had these services been provided, White would have received the advice that he asserts was essential to his determination of whether or not to file an application for post-conviction relief.

This is not to say that White can satisfy the first requirement of his "access to the courts" claim simply by showing a breach of the duties imposed upon the contract attorneys by their contract. However, what White has done is generate genuine issues of material fact as to whether the conduct of the contract attorneys in this case, which White avers consisted of simply handing him an application for post-conviction relief without even attempting to provide him with any advice concerning the merits of his claim, *when he had no other source of information to assess the merits of his claim*, constituted providing

" 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Lewis*, 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds*, 430 U.S. at 825, 97 S.Ct. 1491). Because the "touchstone" of White's "access to the courts" claim is whether he was provided with " 'meaningful access to the courts,' " *see id.* (quoting *Bounds*, 430 U.S. at 823, 97 S.Ct. 1491), not just some access to the courts, handing an inmate an application for post-conviction relief, standing alone, does not appear to be nearly enough.[2]

### b. "Actual injury"

██ Moreover, because the "touchstone" of White's "access to the courts" claim is whether he was provided with " 'meaningful access to the courts,' " *see id.* (quoting *Bounds*, 430 U.S. at 823, 97 S.Ct. 1491), he "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," *i.e.*, that he suffered "actual injury." *Id.* As a requirement of showing "actual injury," White must show that the hindered claim was "nonfrivolous." *Id.* at 351–53, 116 S.Ct. 2174; *Moore*, 266 F.3d at 933 (concluding that an inmate's "access to the courts" claim failed where he "ha[d] not made a showing that either of his dismissed cases was nonfrivolous"). The court finds that White's affidavit is sufficient to generate genuine issues of materi-

---

**2.** Whether or not White got some advice from someone other than a "contract attorney"—such as counsel appointed to represent him in this case—is simply not relevant to whether or not *the defendants* provided " 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' " *Lewis*, 518 U.S. at 351, 116 S.Ct. 2174 (quoting *Bounds*, 430 U.S. at 825, 97 S.Ct. 1491), even if it might be relevant to whether or not White suffered any "actual injury" because of the subpar performance of

the "contract attorneys." First, counsel appointed in this case was not appointed to advise White in any other matter. Moreover, the record evidence is that counsel appointed in this case simply recommended that White file his application for post-conviction relief as soon as possible, again without making any assessment of the merits of White's extradition/jurisdiction claim or the consequences of filing such a claim in terms of reinstatement of other charges.

al fact that his claim of violations of the Iowa Uniform Criminal Extradition Act are "nonfrivolous." *See, e.g.*, IOWA CODE § 820.10 (concerning requirements for testing the legality of the arrest for extradition).

Moreover, the record evidence is sufficient to generate genuine issues of material fact that White "had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [the inaction of the contract attorneys] that he was unable even to file a complaint" for post-conviction relief before the statute of limitations ran. *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. Again, White has pointed to evidence in the record that he had no source of information other than the contract attorneys to assess the merits of his potential claim for post-conviction relief, because the law library was no longer kept up to date, such that he could not research the question on his own, nor did the ASP allow him to consult with any "jailhouse lawyers." Because filing a meritless post-conviction relief application carried with it potentially dire consequences, in terms of reinstatement of charges carrying substantial additional prison sentences, White contends—and the court finds that he has generated genuine issues of material fact that he was—effectively "so stymied" that he could not even file a complaint, even though he knew post-conviction relief proceedings were theoretically available, apparently knew what the deadline was for filing a post-conviction relief application, and was handed a form application for post-conviction relief.

Because the court perceives genuine issues of material fact on White's individual claim, the court will reject Judge Zoss's recommendation that summary judgment in favor of the defendants be granted on that claim, and will instead deny the defendants' motion for summary judgment on White's individual "access to the courts" claim.

## III. CONCLUSION

Upon the foregoing, the March 21, 2003, Report and Recommendation by United States Magistrate Judge Paul A. Zoss (docket no. 26) is **accepted in part and rejected in part:**

1. That part of the Report and Recommendation recommending that the defendants' motion for summary judgment be granted as to White's purported class action claim is **accepted;** however,

2. That part of the Report and Recommendation recommending that the defendants' motion for summary judgment be granted as to White's individual claim is **rejected.**

Similarly, the defendants' October 28, 2002, motion for summary judgment (docket no. 14) is **granted in part and denied in part:**

1. That part of the defendants' motion seeking summary judgment on · White's purported class action claim is **granted,** and the class action claim is **dismissed;** however,

2. That part of the defendants' motion seeking summary judgment on White's individual claim is **denied,** and this matter will proceed to trial on. that claim.

**IT IS SO ORDERED.**