# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1822

_____

| | | |
|---|---|---|
| Archie Bear, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| John Fayram, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 11, 2011
Filed: August 16, 2011

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Archie Bear filed a petition for writ of habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254. The district court dismissed the petition as untimely under 28 U.S.C. § 2244(d). Bear appealed, and this court vacated the judgment and remanded to the district court for further development of the record. On remand, the district court[1] conducted an evidentiary hearing and again dismissed the petition as untimely. Bear appeals, and we affirm.

_____

[1] The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

I.

On January 28, 2000, an Iowa jury found Bear guilty of second-degree murder, and the state court sentenced him to a term of imprisonment not to exceed 50 years. From April 2000 to November 2001, Bear was incarcerated at the Iowa State Penitentiary in Fort Madison, Iowa. He was then transferred to the Anamosa State Penitentiary, where he is presently incarcerated.

In March 2001, the Iowa Court of Appeals affirmed Bear's conviction. The Supreme Court of Iowa denied his application for further review on June 15, 2001. On June 25, 2004, Bear filed an application for post-conviction relief in Iowa district court. The court denied the application, and the Iowa Court of Appeals affirmed. On August 10, 2007, the Supreme Court of Iowa denied Bear's application for further review.

Bear filed a federal habeas corpus petition on May 1, 2008. The district court dismissed the petition as untimely and concluded that the circumstances did not justify equitable tolling of the limitations period. On appeal, this court vacated the district court's judgment and remanded the case "for further development of the record to determine whether the state created an impediment that prevented the petitioner from filing a timely federal habeas petition within the meaning of 28 U.S.C. § 2244(d)(1)(B) by failing to provide access to the AEDPA limitation statute." *Bear v. Burt*, No. 08-2725, (8th Cir. Apr. 6, 2009) (mem.).

On remand, Bear argued that § 2244(d)(1)(B) tolled the limitations period for the filing of his petition, because the State of Iowa allegedly deprived him of his constitutional right of meaningful access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977). He complained that the State did not make resources available at Anamosa from which he could have discerned the applicable limitations period. After conducting an evidentiary hearing, the district court found that "the [Anamosa] law

library contained copies of the AEDPA limitation provision [in February 2002], prison officials did not prevent Mr. Bear from accessing the statute, and the prison provided a legal assistance program which made an attorney available to advise Mr. Bear about filing a habeas petition." Based on these findings, the court concluded that the State had not deprived Bear of meaningful access to the courts, and thus did not impede the filing of a habeas petition for the purposes of § 2244(d)(1)(B). The court dismissed Bear's petition as untimely, but granted his application for a certificate of appealability.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year limitations period for state prisoners to file federal habeas corpus petitions. 28 U.S.C. § 2244(d)(1). Typically, this one-year period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). As relevant here, the limitations period is tolled until "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." *Id.* § 2244(d)(1)(B). Further, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted," *id.* § 2244(d)(2), but "the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period." *Painter v. Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001). The parties agree that, absent tolling due to a state-created impediment, the limitations period expired on September 13, 2002, one year after the time to petition for direct review in the U.S. Supreme Court expired. In that event, Bear's federal habeas petition would be untimely.

Inmates have a constitutional right of access to the courts that requires the provision of some means "for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 825). There is no one method of satisfying this constitutional requirement, and a "prison system may experiment with prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other devices." *Bear v. Kautzky*, 305 F.3d 802, 806 (8th Cir. 2002). To prove a violation of the constitutional right, an inmate must show an "actual injury" by "demonstrat[ing] that the alleged shortcomings" in prison resources "hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

On appeal, Bear challenges the district court's finding that the Anamosa law library contained copies of the limitations provision. He also argues that, even if the library contained the relevant provision, the lack of additional resources deprived him of meaningful access to the courts and served to toll the running of the limitations period under § 2244(d)(1)(B).[2] We review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Jackson v. Ault*, 452 F.3d 734, 735 (8th Cir. 2006).

A.

In the years preceding Bear's arrival at Anamosa, the prison instituted a contract-attorney system and no longer maintained a fully updated library. In about

---

[2]In the district court, Bear argued that he is entitled to equitable tolling, and he renews that contention on appeal. As the district court recognized, the scope of this court's remand was limited to the question of statutory tolling under § 2244(d)(1)(B), and we therefore consider only that question. *See United States v. Walterman*, 408 F.3d 1084, 1085 (8th Cir. 2005).

February 2002, the facility opened a "Legal Resources Center," to which we refer as "the library," and retained books and other materials from the former library.

We first consider whether the district court clearly erred in finding that the Anamosa law library contained copies of the limitations provision when it opened in about February 2002. The court based its finding on evidence that the library maintained copies of the 1997 and 1998 editions of West's Federal Civil Judicial Procedure and Rules ("Civil Rules") and the 1998 edition of West's Federal Criminal Code and Rules ("Criminal Rules"), all of which contained the relevant statutory provision. Specifically, the affidavit of Carol Husmann, a local community college staff member who supervised various activities involving the library, stated that in 2005, she located copies of the 1997 and 1998 editions of the Civil Rules in the library. She attached to her affidavit photocopies of the outside and inside covers of these books. The checkout cards pictured on the inside covers, although stamped "Kirkwood Comm College <u>Not</u> for checkout," indicate that three of the copies were checked out in 2001 and 2002. In addition, the affidavit of Robert Williams, an Anamosa inmate, stated that he saw copies of the 1998 Civil and Criminal Rules in the library in 2002. And finally, a "Book List" with the caption "Inventory as of 12/09/02" includes a printed notation "1998 Fed. Civ. Jud. Pro. and Rules Book B" and a handwritten notation "Federal Civil Judicial Procedure and Rules 199" (with the fourth numeral not visible).

Bear argues that the evidence does not support the district court's finding. He first notes that the Book List includes a numerical identifier for each book listed, and that the highest-numbered book is 1055. Because one copy of the 1998 edition of the Civil Rules identified by Husmann bears the number "1084," Bear intimates that the book was not in the library as of December 2002. But at most, this evidence suggests that the library did not possess that specific book as of December 2002. As explained, the Book List references two copies of the Civil Rules – one 1998 edition, and another copy published sometime in the 1990s. Even assuming that the "Book List"

represents a complete inventory (the district court said its "authenticity and completeness" were "uncertain"), the list supports the district court's finding that the library housed a book that included the limitations provision.

Bear next contends that the Williams affidavit was equivocal on what editions of the Civil and Criminal Rules he saw in 2002. While the district court stated that Williams "saw copies of the 1998 Civil and Criminal Rules in the [Anamosa] law library in 2002," Bear maintains that Williams could not verify the edition. The affidavit reasonably supports the district court's characterization. It states that Williams "saw copies of the book titles pictured in the attached photos" but that he "cannot say that the books in the attached photos . . . are the exact same ones that [he] saw." Attached to the affidavit are photos of the 1998 editions of the Civil and Criminal Rules. It is reasonable to read the affidavit as stating that Williams saw copies of the 1998 editions in the library, but that he could not be sure that he saw the specific books pictured. The affidavit therefore supports the district court's finding.

Finally, Bear argues that the information provided by Husmann is subject to an alternative interpretation. Specifically, he hypothesizes that the checkout cards refer to loans that occurred at Kirkwood Community College, that Kirkwood stopped checking the books out in 2003, and that Kirkwood donated them to the library in 2003 or later. But an equally plausible interpretation supports the district court's finding. The checkout cards can be read to indicate that the books could not be checked out *at Kirkwood*, but that when the books arrived at the Anamosa library, inmates were permitted to check out the books, and did so in 2001 and 2002.

Bear maintains that his proposed sequence of events was corroborated by Jeffrey Ditch, a former librarian at Anamosa, who explained the library's checkout procedures and testified that he did not recall the library receiving materials from Kirkwood during his tenure. Ditch ceased working at the library at some point between January 2001 and January 2002. Bear suggests that the markings on the

checkout cards do not conform to the checkout practices as described by Ditch. During his deposition, however, Ditch was asked specifically about the checkout cards appended to Husmann's affidavit. He stated that for the checkout dates occurring before 2002, he or someone under his supervision would have stamped the dates appearing on the checkout cards. This statement contradicts Bear's theory that the books did not arrive until 2003. In any event, Ditch's testimony regarding the library's checkout practices and whether the library obtained books from Kirkwood is not determinative of the library's holdings as of February 2002, because Ditch no longer was employed at that time.

Even assuming the copies identified by Husmann were obtained by the library after the library's relocation in 2002, the Williams affidavit and the Book List support the district court's finding that the library contained at least some copies of the limitations provision in 2002. On this record, we cannot say that the district court clearly erred.

B.

Bear also contends that, even assuming the library contained the limitations provision, the State failed to provide meaningful access to the courts, because it did not make resources available that explained how courts were interpreting the provision. He maintains that an inmate who merely read the text of the provision would be unaware that although the limitations period is tolled during the pendency of a state post-conviction relief application, *see* 28 U.S.C. § 2244(d)(2), the period is not tolled *prior to the filing* of the state application. *See Painter*, 247 F.3d at 1256. An inmate, according to Bear, would be unaware that the one-year limitations period can expire prior to the filing of the state application.

Bear's argument is without merit. The availability of the limitations provision in the library provided Bear with the level of assistance necessary to satisfy the

constitutional requirement. *See Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007). This court's interpretation of § 2244(d)(2) is consistent with the subsection's plain language, which tolls the limitations period only when "a *properly filed* application for State post-conviction or other collateral review . . . is *pending*." 28 U.S.C. § 2244(d)(2) (emphases added); *see also Boston v. Weber*, 525 F.3d 622, 626 (8th Cir. 2008). As the necessary information was available to Bear, he cannot show that alleged shortcomings in the library hindered his ability to pursue a legal claim. *See Lewis*, 518 U.S. at 351.

The State also made available contract attorneys who could advise inmates about the limitations provision. Bear admits that he did not seek the assistance of a contract attorney at Anamosa until 2006, but explains that he did not do so because the attorneys were not required to perform legal research. The district court found, however, that "[p]roviding information about the limitation period for filing a habeas petition would seem to be a basic part of the contracted-for services; a simple, fundamental legal question which would not involve research beyond looking at the statute." Absent some evidence that contract attorneys were unable to give sufficient guidance about the statute of limitations, this finding is not clearly erroneous. Pursuant to their contracts, the attorneys agreed to "assist offenders in the correctional facility . . . who seek legal advice or wish to file . . . [p]etitions for habeas corpus" and "[a]dvise the offender about the prerequisites to filing." Having failed even to inquire of a contract attorney about the limitations period, Bear cannot complain that the attorneys were unable to provide sufficient assistance without performing legal research.

The resources available to Bear provided him with the "minimal help necessary" to file his particular claim. *Lewis*, 518 U.S. at 360. We therefore agree with the district court that § 2244(d)(1)(B) did not operate to toll the limitations period, and that Bear's federal habeas petition was untimely.

\* \* \*

The judgment of the district court is affirmed.

_____